## UNITED STATES ex rel. GOTTLIEB et al. v. COMMISSIONER OF IMMIGRATION OF PORT OF NEW YORK.*

(Circuit Court of Appeals, Second Circuit. November 17, 1922.)

No. 72.

1. Statutes ⬩181(1)—Court endeavors to ascertain legislative intent.

In construing statutes, it is the duty of the court to endeavor to ascertain the intention and policy of Congress in their enactment, and to make practical application of that intention to the facts of the case.

2. Statutes ⬩225—Acts in pari materia are to be construed together.

Immigration Act Feb. 5, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 4289¼a–4289¼u), and Act May 19, 1921, limiting the number of immigrants from each country to 3 per cent. of that nationality residing in the United States, and providing that it is an addition to the other immigration laws, are in pari materia and are to be construed together, as if they formed part of the same statute and were enacted at the same time.

3. Statutes ⬩225—Later act does not supersede earlier one in pari materia, if other construction is reasonable.

No part of the previously existing law on the same subject is rendered inoperative by a later law, unless no other construction of the later law is reasonable.

4. Statutes ⬩206—Effect given, if possible, to every part of statute.

Effect is to be given, if possible, to every word, clause, and sentence of the statute.

5. Statutes ⬩181(2)—Absurd or unjust construction is to be avoided, if possible.

A construction of a statute, which would lead to an absurd or unjust result, is to be avoided, if possible, and where the construction is doubtful, arguments from absurdity or injustice of a proposed construction may be considered.

6. Aliens ⬩51½, New, vol. 16A Key-No. Series—Wife and minor child of minister can enter after quota for country has been admitted.

Act of May 19, 1921, § 2, limiting the number of aliens of any nationality, who may be admitted in any year to 3 per cent. of the number of such nationality then residing in the United States in 1910, but excepting from its provision ministers of religion, when construed with Immigration Act Feb. 5, 1917, section 3 of which provides that the exclusion clause is not to apply to ministers, nor to their legal wives, nor their children under 16 years of age, will not be given the absurd construction of admitting a minister of religion after the quota from his country has previously been admitted, and excluding his wife and minor child, thus requiring their separation.

Appeal from the District Court of the United States for the Southern District of New York.

Habeas corpus proceeding by the United States, on the relation of Gittel Gottlieb and another, against the Commissioner of Immigration of the Port of New York, or other person having charge, custody, or control of the bodies of Gittel and Israel Gottlieb. From an order sustaining the writ and discharging the relators (278 Fed. 564), respondent appeals. Affirmed.

This appeal is from an order sustaining a writ of habeas corpus and directing that the relators, who had been ordered deported from the United States, and were in the custody of the Commissioner of Immigration at the

⬩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Certiorari granted 43 Sup. Ct. 364, 67 L. Ed. ——.

port of New York pending such deportation, be released and discharged from custody and that they be admitted into the country.

It appears that the relators are natives of Palestine, Jerusalem. The relator Gittel Gottlieb is 28 years of age, and the wife of Solomon Gottlieb, a rabbi of a synagogue in the city of New York who is receiving a salary of $2,000 a year. The relator Israel Gottlieb, whose age upon arrival was stated to be 4 years, is the child of Solomon and Gittel. The husband and father of these relators came to the United States from Palestine about 14 months before the arrival of his wife and child and was duly admitted. Prior to the arrival of the relators he had declared his intention to become a citizen. At the time he came to the United States his wife and child did not accompany him, because he did not then have money enough to bring them. Later he sent them money to pay their passage, and wrote them to join him here. In the meantime he was contributing money for their support.

Upon the arrival of the relators at the port of New York they were given a hearing before a Board of Special Inquiry, which excluded them on the ground that they came to the United States in violation of the Act of May 19, 1921 (42 Stat. 5), in that they are natives of a country whose quota has been filled. The case was then taken to the Department of Labor, and the Secretary of Labor affirmed the decision of the board, and directed the deportation of the aliens on January 18, 1922.

Thereupon the General Secretary of the United Charity Institutions of Jerusalem, which maintains an office in the city of New York, acting for Solomon Gottlieb, the husband and one and the father of the other of the relators, who was confined to his bed by illness, petitioned for a writ of habeas corpus against the Commissioner of Immigration at the port of New York, in whose custody the relators then were. The writ was granted and after the return and a hearing thereon the writ was sustained, and the relators were ordered discharged on March 3, 1922.

William Hayward, U. S. Atty., of New York City (James C. Thomas, Jr., Asst. U. S. Atty., of New York City, of counsel), for appellant.

Joseph G. M. Browne, of New York City (Joseph G. M. Browne and Barnett E. Kopelman, both of New York City, of counsel), for appellees.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). The question presented by this appeal involves a novel and important question under the Immigration Exclusion Act. If the immigration authorities are right in their understanding of the act, under which the relators have been denied a right to enter the country, a wife and child of a minister, resident in the United States, must be separated from him and returned to the country from whence they came, and the conditions said to prevail in that country as to persons of their particular faith seem to be such as to make their deportation one of unusual hardship.[1]

[1] An affidavit in the record made by one who left Jerusalem on November 9, 1921, is as follows: "Deponent states that with regard to the conditions in Jerusalem, respecting the Jewish population there, that said conditions are such that it is absolutely unsafe for such persons to remain there. Deponent has known of two of the uprisings that have taken place in Jerusalem, and that deponent actually saw several Jews slain by Arabs with knives. That deponent also saw buildings used by the Jews for religious purposes set on fire and destroyed. Deponent also saw many persons of the Hebrew faith lying wounded at the American Zionist Medical Corps Hospital at Jerusalem. That robbery of the Jewish residents is frequent, and that women and girls of the Jewish faith have also been attacked and ravished.

In deciding the question presented, it is necessary to ascertain the intention of Congress as it is found in the Immigration Acts; for, if Congress has declared that aliens situated as these relators are cannot enter, they must be excluded, even if the courts think their exclusion in any particular case would work extreme hardship and even great injustice. It is for Congress, and not for the courts, to determine what classes of aliens shall enter the United States and in what numbers. The duty of the judges, as Lord Bacon said, is "jus dicere," not "jus dare."

The Immigration Act of February 5, 1917, which is the basic act on this subject, enumerates, in section 3 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼b), certain classes of aliens who cannot be permitted to enter the United States. The section then goes on to provide that the exclusion clause is not to apply to ministers, nor to their legal wives, nor their children under 16 years of age who accompany them, or who subsequently may apply for admission to the United States. The provision referred to is as follows:

"The provision next foregoing, however, shall not apply to persons of the following status or occupations: Government officers, ministers or religious teachers, missionaries, lawyers, physicians, chemists, civil engineers, teachers, students, authors, artists, merchants and travelers for curiosity or pleasure, nor to their legal wives or their children under sixteen years of age who shall accompany them or who subsequently may apply for admission to the United States, but such persons or their legal wives or foreign-born children who fail to maintain in the United States a status or occupation placing them within the excepted classes shall be deemed to be in the United States contrary to law, and shall be subject to deportation as provided in section 19 of this act."

The act of 1917 has not been repealed. Whether the above provision has been impliedly repealed by the act now to be considered is an important question which must be determined. The Act of May 19, 1921, which is entitled "An act to limit the immigration of aliens into the United States," limits in section 2 the number of aliens of any nationality who may be admitted in any fiscal year to 3 per centum of the number of foreign-born persons of such nationality resident in the United States as determined by the United States census of 1910.

It is admitted that at the time the relators arrived in this country the number of aliens from Palestine entitled to enter had reached the 3 per centum to which that country was entitled under the above provision for the fiscal year. It was for that reason that these relators

Deponent states that the conditions there are such that it is absolutely unsafe for persons of said faith to walk upon the streets, and that business there is at a standstill because of the fear of attack. That such attacks are directed only against persons of the Jewish faith. That about four or five days after the said uprising deponent left to sail for the United States, and that conditions were so bad and grave that it was necessary to have official protection by way of escorting said persons to the pier where they were about to embark. Deponent states that he has been informed that this affidavit has been sought for corroboration of the allegations made by the said relator Gittel Gottlieb as to conditions prevailing in Jerusalem, and deponent therefore makes said affidavit to aid the court, and without any other interest whatever in the application herein."

were excluded. But it is also to be had in mind that the act of 1921 provides in section 4:

"That the provisions of this act are in addition to and not in substitution for the provisions of the immigration laws."

And it is claimed that because of section 4 in the act of 1921, there is no repeal of that part of section 3 of the act of 1917, above quoted which provides that the exclusion clauses do not apply to *ministers,* nor their *wives,* nor their children under 16 years of age who accompany them. But it becomes necessary to consider certain other provisions in the Act of May 19, 1921, which are equally involved herein. This act of 1921 in section 2a provides as follows:

"That the number of aliens of any nationality who may be admitted under the immigration laws to the United States in any fiscal year shall be limited to 3 per centum of the number of foreign-born persons of such nationality resident in the United States as determined by the United States census of 1910. ☼  *  ☼"

The section then goes on to state that in reckoning the percentage limits certain specified classes of persons shall not be counted. And section 2d of the act provides as follows:

"When the maximum number of aliens of any nationality who may be admitted in any fiscal year under this act shall have been admitted all other aliens of such nationality, except as otherwise provided in this act, who may apply for admission during the same fiscal year shall be excluded. *  *  *  "

It then provides that certain specified classes of aliens and among them "ministers of any religious denomination" may be admitted notwithstanding the maximum number of aliens of the same nationality admissible in the same fiscal year shall have entered the United States. It makes no mention, however, of the wives or children of such ministers. The failure to mention them in the act of 1921 while they are named in the act of 1917 led to the exclusion of the relators and causes whatever doubt exists as to their right of entry.

[1] In construing these statutes it is of course the duty of the court to endeavor to ascertain the intention and policy of Congress in the enactment of the legislation in question, and then to make practical application of that intention to the facts of this case. The fundamental rule of interpretation is that a statute is to be expounded "according to the intent of them that made it." 4 Inst. 330; Sussex Peerage, 11 Cl. & F. 143.

[2, 3] The Act of February 5, 1917, and that of May 19, 1921, are statutes in pari materia and are to be read together as constituting one law. All statutes relating to the same subject being in pari materia are to be construed together as if they formed part of the same statute and were enacted at the same time. ˙ Potter, Dwar. St. 145; Board of Commissioners v. Ætna Life Ins. Co., 90 Fed. 222, 227, 32 C. C. A. 585. The two acts are in pari materia and must be read together, and as was said in United States v. Munday, 222 U. S. 175, 184, 32 Sup. Ct. 53, 57 (56 L. Ed. 149):

"No part of the previously existing law upon the same subject is to be regarded as inoperative unless no other construction of the later legislation is reasonable."

[4] It is not to be lost sight of that it is one of the cardinal rules of construction that effect is to be given, if possible, to every word, clause, and sentence of the statute. United States v. Ninety-Nine Diamonds, 139 Fed. 961, 72 C. C. A. 9, 2 L. R. A. (N. S.) 185.

[5] In Maxwell on the Interpretation of Statutes (5th Ed.) 325, the rule is correctly stated as follows:

"Whenever the language of the Legislature admits of two constructions, and if construed in one way would lead to obvious injustice, the courts act upon the view that such a result could not have been intended, unless the intention had been manifested in express words."

The rule thus stated is supported by many cases decided in the English courts which are cited by the writer of the treatise above quoted. There are numerous instances in which the courts of this country, federal and state, have applied the rule in the construction of doubtful statutes.

A construction of a statute which would lead to an absurd result is to be avoided, if possible. Thus in United States v. Gue Lim, 176 U. S. 459, 20 Sup. Ct. 415, 44 L. Ed. 544, it was held that the wife of a Chinese merchant entitled by treaty to come into this country and dwell here was entitled to enter also and that she could not be required to furnish the certificate required by the statute from Chinese persons other than laborers "as such construction of the statute would lead to absurd results," and it was held that the act was never intended to exclude the wife and minor children of a merchant lawfully entitled to enter.

In cases where the proper construction of a statute is doubtful, arguments from the absurdity or injustice of a proposed construction may properly be considered. The Supreme Court has frequently recognized the rule that, where a particular construction of a statute will occasion great inconvenience or produce injustice, that view is to be avoided, if another and more reasonable interpretation is present in the statute. Knowlton v. Moore, 178 U. S. 41, 77, 20 Sup. Ct. 747, 44 L. Ed. 969; Bate Refrigerating Co. v. Sulzberger, 157 U. S. 1, 37, 15 Sup. Ct. 508, 39 L. Ed. 601; Blake v. National Banks, 23 Wall. 307, 320, 23 L. Ed. 119; Wilson v. Rousseau, 4 How. 646, 680, 11 L. Ed. 1141; Bloomer v. McQuewan, 14 How. 539, 553, 14 L. Ed. 532; and in Lau Ow Bew v. United States, 144 U. S. 47, 59, 12 Sup. Ct. 517, 520 (36 L. Ed. 340) Chief Justice Fuller, speaking for the court, said:

"Nothing is better settled than that statutes should receive a sensible construction, such as will effectuate the legislative intention, and, if possible, so as to avoid an unjust or an absurd conclusion."

In the well-known case of Church of the Holy Trinity v. United States, 143 U. S. 457, 12 Sup. Ct. 511, 36 L. Ed. 226, the Supreme Court construed the Act of February 26, 1885 (23 Stat. 332), which in terms prohibited the importation and migration of aliens "under contract or agreement to perform labor" in the United States. Trinity Church in the city of New York had made a contract with an alien minister residing in England, by which he was to remove to New York and enter into its service as rector. It was claimed that this came

within the terms of the statute and the court below so held. 36 Fed. 303. The Supreme Court, however, reversed the judgment below. It held that, although the case came within the letter of the statute, it was not within the intention of the Congress, and therefore could not be within the statute. The court, speaking through Justice Brewer, said:

"It is a familiar rule that a thing may be within the letter of the statute, and yet not within the statute, because not within its spirit, nor within the, intention of its makers. This has been often asserted, and the reports are full of cases illustrating its application. This is not the substitution of the will of the judge for that of the Legislature, for frequently words of general meaning are used in a statute, words broad enough to include an act in question, and yet a consideration of the whole legislation, or of the circumstances surrounding its enactment, or of the absurd results which follow from giving such broad meaning to the words, makes it unreasonable to believe that the Legislature intended to include the particular act."

The court in the above case went much further than we are called upon to go in the instant case, which we regard as within both the letter and spirit of the statute, construing both acts as one.

[6] Keeping in mind the above rules of interpretation we construe the acts of 1917 and 1921 as one statute, the second act being, as provided therein, an addition to and not a substitute for the first act. The effect of the second act is to add to the classes excluded under the original act an additional class to those previously excluded, but it does not deprive those to whom a right of entry was expressly given in the first act of the right so granted. Neither the letter nor the spirit of the second act calls for a construction imputing to Congress the intention to create a condition so unreasonable and absurd as to admit a minister while at the same time excluding the members of his family. An interpretation which would exclude the wife and children would be based on a consideration of the second act taken alone. But it cannot be construed alone, but must be interpreted upon a general survey of both acts in all their parts. And when so interpreted we think the right of entry given in the first act to the wife and children of a minister has not been withdrawn because of anything to be found in the second act. If Congress intended to admit the minister, but to exclude his wife and children, it has failed to indicate it by any clear and sufficiently definite specific provision which justifies us in holding that the right expressly granted in the unrepealed act of 1917 has been withdrawn.

The order sustaining the writ of habeas corpus, and ordering the release and discharge of the relators Gittel Gottlieb and Israel Gottlieb from the custody of the respondent is affirmed.