**UNITED STATES ex rel. SIMONIAN et al. v. TOD, Commissioner of Immigration.**

(Circuit Court of Appeals, Second Circuit. February 4, 1924.)

No. 199.

**1. Aliens ⬒46—Persons who have arranged to attend business college held "students," within Immigration Act.**

Persons who have arranged in good faith to attend business college for the purpose of study *held* "students," within Immigration Act Feb. 5, 1917, § 3 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼b), making provision of such Immigration Act as to exclusion of aliens inapplicable to "students."

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Student.]

**2. Statutes ⬒219—Erroneous executive construction not binding.**

Department rules and regulations, within authority conferred, have the force of law; but the construction of a statute is primarily for the courts, and erroneous construction by executive order cannot change its meaning.

Appeal from the District Court of the United States for the Southern District of New York.

Application for writ of habeas corpus by the United States, on the relation of Berjoohi Simonian and Beatrice Simonian, against Robert E. Tod, Commissioner of Immigration. From an order sustaining the writ, respondent appeals. Affirmed.

The relators are girls, 18 and 16 years of age, respectively, who arrived at the port of New York on March 23, 1923. They are Armenians, natives of Harput, Turkey, where their parents reside. At the time of their arrival, the so-called Turkish quota was full. As relators claimed to be students, a hearing was had before a board of special inquiry on March 24, 1923. Each relator testified in excellent English. They showed that they were both graduated from high school; that they had then become employés of a large firm, and they had come to the United States "to study here for commercial business," and, after such study, intended to return to their home. They expected to be supported by their uncle while in the United States.

The uncle testified that he resided at 48 Forbes street, Worcester, Mass., was a naturalized American citizen, and produced his certificate; that he had a wife and three children, had two retail clothing stores, worth about $15,000 net; that he had a substantial balance in Worcester Bank and owned the house in which he lived. He produced a letter from the Worcester Business Institute, 436 Main street, Worcester, Mass., which stated that $36 had been received from the uncle "as initiation fee for his nieces," and that they would enter Worcester Business Institute upon their arrival at Worcester, and that the uncle would be responsible for their support and tuition while in Worcester. The uncle further testified that his nieces would remain in the United States until they had finished their schooling, which, perhaps, might be a year, and would depend on how they got along, and that he had no intention of placing them in any business in this country.

One of the three members of the board of special inquiry moved to admit relators "for a temporary sojourn as students to pursue their studies in this country." The other two members of the board voted to exclude the relators. The Assistant Commissioner of Immigration at Ellis Island, in his official communication to the Commissioner General of Immigration at Washington, dated March 27, 1923, did not, in any manner, question the truth of the testimony offered by or on behalf of relators. He stated: "It has been the opinion of this office that aliens coming to business colleges or automobile schools are not entitled to exemption as students, and we note that recent decisions of the department apparently are based on the same view."

⬒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

On September 25, 1923, i. e., some six months after the order of exclusion herein made, the United States Department of Labor promulgated General Order No. 17. In that order it was recognized that students are admissible. This general order made certain rules or regulations in respect of procedure, such as to presentation of satisfactory evidence that the alien is qualified to enter, and one of the qualifications under this general order is that the alien "has definitely arranged to enter a recognized institution of higher education in the United States as a student." This order then provided: "(3) For the purposes of this order the term 'institution of higher education' shall be considered to mean any university, college, seminary, or other institution affording advanced academic or technical training, which is so recognized and approved by the Secretary of Labor, and the term 'student' shall be considered to mean a person who is qualified to enter and has definitely arranged to enter a particular institution for a definite course of study."

William Hayward, U. S. Atty., of New York City (James C. Thomas, Asst. U. S. Atty., of New York City, of counsel), for appellant.

Platt, Field, Taylor & Patterson, of New York City (George W. Field and Frank A. Fritz, both of New York City, of counsel), for appellees.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

MAYER, Circuit Judge (after stating the facts as above). In the Gottlieb and Markarian Cases, this court held that section 3 of the Immigration Act of February 5, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼b), which is the basic act, had not been repealed. U. S. ex rel. Gottlieb v. Commissioner of Immigration, 285 Fed. 295; U. S. ex rel. Markarian v. Tod, 290 Fed. 198. The provision here applicable (quoted in full at page 297 of the Gottlieb Case) reads as follows:

"The provision next foregoing, however, shall not apply to persons of the following status or occupations: * * * Students. * * *"

1. In addition to the two decisions, supra, of this court, it will be noted that the executive authorities, by the promulgation of General Order No. 17, supra, have thus recognized the right to admit students to this country. While this action of the executive authority is by no means conclusive, it is at least strange that the government now insists, in effect, that we shall reverse our previous holdings, when it appears that this General Order No. 17 was adopted subsequent to the two decisions of this court, supra.

[1] 2. The sole question in the case is whether on this record these relators may be classified as "students," within the meaning of the act. There is no suggestion in this record that the Worcester Business Institute is not a legitimate business school or institute, and there cannot be any suggestion that these relators do not intend in good faith to study at this school and then return to their home. Their uncle, as the testimony shows, is a man of substantial affairs, with a definite home and a definite business. We find nothing in any dictionary which defines "student" as "one who must be qualified to enter a recognized institution of higher education." The usual definition of the word is "a person engaged in a course of study" (New Standard Dictionary, 1922), or "a person who is engaged in a course of study, either general or special" (37 Cyc. 338).

We need not, however, resort solely to dictionary definitions. It is a matter of common knowledge that for many years there have been established in the United States a great many schools or colleges, so called, where business affairs and methods are taught. In these institutions there are courses in bookkeeping, various features of business procedure, and the like. Indeed, so important has become the need of an orderly understanding of such matters, before young persons enter business careers, or a better understanding after they have entered such careers, that many institutions of higher education, including some of the large universities, have business courses as a part either of their curriculum or extension work.

If the Congress had intended to give to the word "student" the narrow construction now contended for by appellant and illustrated in the part of the rule quoted, it could very readily have added the few words necessary to express that intention. No such illiberal purpose will be attributed to the Congress. It is fair to assume that the legislative body, in excepting students with others, never contemplated that the opportunity to be educated in business affairs and methods should be denied to those who come here in good faith for that purpose. We have discussed General Order No. 17, because it may be that the order of an Executive Department, subsequent to the event, in some respects, may be considered as is a subsequent statute. Monroe Cider Vinegar & Fruit Co. v. Riordan (C. C. A.) 280 Fed. 624, particularly at pages 631 and 632.

[2] Rules and regulations, within the authority conferred, such as those intended to assure good faith, have the force of law; but the construction of a statute is primarily for the courts, and the erroneous construction by executive order does not make the word "student" mean something different from what the Congress intended that word to mean in this connection. We go no further than to construe the word in relation to business schools, institutes, or colleges. We readily appreciate that in respect of some subjects to call a person a "student" would be a misnomer.

Order affirmed.