## UNITED STATES ex rel. AZNAR v. COMMISSIONER OF IMMIGRATION AT PORT OF NEW YORK.

(District Court, S. D. New York. February 8, 13, 1924.)

**Aliens ⊛51½, New, vol. 16A Key-No. Series—Validity of marriage by proxy recognized, where valid in country in which marriage took place.**

Where a marriage by proxy was valid in country, in which marriage took place, the validity of the marriage will be recognized in the United States, on immigration of wife to the United States to join alien husband therein, in passing on question whether the wife is entitled to enter under Act May 19, 1921, as amended by Act May 11, 1922 (Comp. St. Ann. Supp. 1923, §§ 4289½–4289½ddd).

Habeas Corpus. Application for writ by the United States, on the relation of Jose Vincente Aznar, husband and next friend of Elodia Gisbert Lledo, against the Commissioner of Immigration at the Port of New York. Writ sustained.

Lorenz & Lorenz, of New York City (Keith Lorenz, of New York City, of counsel), for relator.

William Hayward, U. S. Atty., of New York City, for respondent.

MANTON, Circuit Judge. A writ of habeas corpus was granted in this proceeding on August 24, 1923, and came on for hearing in September, 1923, for the purpose of securing the release of Elodia Gisbert Lledo, an immigrant. She was excluded for the reason that the quota from Spain, the country from whence she came, for the month of August, was filled at the time of her application for entry. The specific reason given is:

"Alien excluded as coming in August quota, and also as L. P. C., in view of the fact that the department does not recognize proxy marriages."

---

⊛For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

I denied the release of the immigrant, and filed an opinion giving the reasons, on the 17th of September, 1923. An application was made for me to reconsider my decision, and I granted an order to show cause, which in effect grants this reargument.

The point the applicant makes is that marriages by proxy are, or should be, recognized by the courts of this country, as they are by the courts of other countries, and that therefore, when the applicant sought to enter, she was the wife of a resident of this country and entitled to enter. The record taken before the board at the time of her examination contained the following testimony, given by the immigrant: After testifying that she knew her husband 7 years before he came to the United States; that he has been in the United States about 3 years and 5 months; that she had been engaged to marry him before he left Spain; that she had known him since she was 14 years of age (she is now 23); that she did not marry him before he came, because she did not want to be left behind as a wife, but that they promised to marry; that when he got ready to marry she would marry him by proxy and join him then—she further testified:

"Q. Have you a certificate of marriage, showing where and when this marriage took place? A. Yes.

"Q. Who was the representative of your husband? A. My father represented my husband by proxy.

"Q. And you were married religiously, and civilly? A. Yes. I have a certificate from the parish priest, Vincente Juan Mascarelle, the actuary of the parish church of Alcala and of the diocese of Valencia, showing that I was married both civilly and religiously, on October 9, 1922. (Presents certificate showing that Elodia Gisbert Lledo was married to Jose Vicente Aznar Nadal, single, legitimately represented by Vincente Gisbert Mateu, actually at present living in New York City; also presents certificate of the civil marriage performed in Alcala, in the municipality of Vall de Alcala, and says that on the 9th day of October, 1922, Jose Aznar Nadal, duly represented by Vincente Gisbert Mateu, was married to Elodia Gisbert Lledo; further shows a copy of authorization of proxy made out before the Spanish consul at New York on August 30, 1922.)

"Q. Why didn't your husband come to Spain to marry you? A. Because we are poor, and it would entail great expense to us.

"Q. Do you consider that you are his legal wife? A. I surely do.

"Q. You are advised that for immigration purposes proxy marriages are not recognized by our department. Now, in the event that they should want you to remarry this man, would you be willing to do that? A. Yes; I want to comply with the marriage laws of the United States.

"Q. What is the reason that you didn't come sooner? I note that you were married on October 9, 1922. What detained you? A. I could not come sooner on account of quota. My turn didn't come until now."

Her husband by this proxy marriage testified as follows:

"Q. How long have you been married to her? A. One year.

"Q. Who represented you in this marriage? A. Her father, my wife's father, Vincente Gisbert.

"Q. How long have you been engaged to your wife before you married her? A. Six years. I have known her all my life, and I have courted her for the last six years.

"Q. Why didn't you go back to Spain and marry her? A. Because I would rather live here. I was also afraid of the quota; that I might not be able to return when I got ready.

"Q. Why didn't you marry her before you came here? A. I couldn't then, because I was in the army."

I have before me now a certificate showing a marriage by proxy, both in a religious and civil ceremony, under date of October 29, 1922. The argument of the petitioner is that, if this proxy marriage be lawful and recognized under the laws of this country, she is entitled to enter as the wife of a resident, under the authority of United States ex rel. Gottlieb v. Commissioner (C. C. A.) 285 Fed. 295, and United States ex rel. Markarian v. Tod, 290 Fed. 198, decided June 4, 1923 (C. C. A. Second Circuit). An article in the Harvard Law Review of March, 1919, has been called to my attention, under the title of "Marriage by Proxy and the Conflict of Laws," by Ernest G. Lorenzen.

My attention is not called to any authoritative decision in this country on the subject, but the Judge Advocate General has rendered an opinion in which it has been held that soldiers abroad might marry in the United States through interchanging a marriage contract by mail, providing that such marriages do not contravene state statutes, and that this method might properly be facilitated by the military authorities in France. Prof. Lorenzen says:

"As regards legal prohibitions to marry, there is a conflict of view on the question; but there appear to be no modern cases in England or the United States which have refused to recognize, on the ground that there has been an evasion of the domestic law, a marriage validly celebrated in accordance with the law of the state where the marriage took place, where the difference in the law concerned merely matters of form, inasmuch as the question whether a marriage so celebrated in conformity with the local law will be recognized, notwithstanding any evasion of the law of the state in which the parties were domiciled."

The law of Spain seems to recognize a marriage by proxy. The contract is therefore valid in Spain, and should be recognized in this country. I therefore hold that the marriage by proxy is valid.

The government argued that the Act of May 19, 1921, as amended by Public Resolution 55 of the Act approved May 11, 1922, known as the act to limit the immigration of aliens in the United States, makes it impossible to admit the applicant. That in part reads as follows:

"When the maximum number of aliens of any nationality who may be admitted in any fiscal year under this act shall have been admitted, all other aliens of such nationality, except as otherwise provided *in this act*, who may apply for admission during the same fiscal year, shall be excluded: Provided, that the number of aliens of any nationality who may be admitted in any month shall not exceed 20 per centum of the total number of aliens of such nationality who are admissible in that fiscal year: Provided further, that aliens returning from a temporary visit abroad, aliens who are professional actors, artists, lecturers, singers, nurses, ministers of any religious denomination, professors for colleges or seminaries, aliens belonging to any recognized learned profession, or aliens employed as domestic servants, may, if otherwise admissible, be admitted notwithstanding the maximum number of aliens of the same nationality admissible in the same month or fiscal year, as the case may be, shall have entered the United States; but aliens of the classes included in this proviso who enter the United States before such maximum number shall have entered shall (unless excluded by subdivision [a], from being counted) be counted in reckoning the percentage limits provided in this act: Provided further, that in the enforcement of this act preference shall be given so far as possible to the wives, parents, brothers, sisters, children under eighteen years of age, and fiancees, (1) of citizens of

the United States, (2) of aliens now in the United States who have applied for citizenship in the manner provided by law, or (3) of persons eligible to United States citizenship who served in the military or naval forces of the United States at any time between April 6, 1917, and November 11, 1918, both dates inclusive, and have been separated from such forces under honorable conditions." Section 2 (d), being Comp. St. Ann. Supp. 1923, § 4289½a.

The husband by the proxy marriage of the applicant for admission does not fall within the special clause referred to above, and may be admitted, even through the quota be extended. The claim for admission here rests solely upon the theory that the applicant is the wife of an alien residing in the United States. He is a longshoreman. This would distinguish the case from United States ex rel. Gottlieb v. Commissioner (C. C. A.) 285 Fed. 295; but it would not distinguish the case from United States ex rel. Markarian v. Tod, where the husband was a merchant. I must recognize the Markarian Case as binding upon me in the District Court. I can see no distinction between that case and this. There is nothing in the immigration law itself which refuses to recognize proxy marriages. The mere statement of the board of special inquiry that it does not recognize proxy marriages is not important.

I therefore shall reverse my former decision and hold the applicant is entitled to admission. Writ sustained.

ADDENDUM: Since the preparation of the foregoing opinion, my attention has been called to the case of In re Sabina Suzanna, 295 Fed. 713, in the United States District Court for the District of Massachusetts, decided December 28, 1923, holding that a marriage by proxy between a resident of Pennsylvania and a subject of Portugal will be recognized as valid by the District Court for that district.