### UNITED STATES ex rel. VARIANO v. CURRAN, Commissioner.

(District Court, S. D. New York. March 4, 1924.)

Aliens ☞51½, New, vol. 16A Key-No. Series—Returned alien held not entitled to bring wife with him unless returning from temporary visit abroad.

Where an alien laborer, who at the time of his first entry was not within any of the classes excepted from exclusion under Immigration Act 1917, § 3 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼b), or Quota Law, § 2 (d), being (Comp. St. Ann. Supp. 1923, § 4289½a), after living in the United States about two years returned to Italy, and there married an excluded alien, and thereafter returned to the United States, *held* that, unless he was returning from a temporary visit abroad, his wife could not subsequently enter; the quota of Italy being full.

Habeas corpus by the United States, on the relation of Michele Variano, against Henry H. Curran, Commissioner. Reference ordered as to whether relator, on re-entering, was returning from a temporary visit abroad.

Sur return to a writ of habeas corpus upon the exclusion of the relator's wife under the "Quota Law." The relator is an Italian laborer who came to the United States at a time not shown. He stayed here about two years, and then returned to Italy, again at a time not shown. While there, on December 29, 1919, he married the excluded alien, and then came back to this country a second time, arriving on June 13, 1920. Later, and on December 12, 1922, he declared his intention of becoming a citizen.

The relator admits that the Italian quota was full when his wife was excluded, but asserts that, as she was his wife, and as he is a resident alien, she comes within the decisions of U. S. ex rel. Gottlieb v. Commissioner of Immigration (C. C. A.) 285 Fed. 295, and U. S. ex rel. Markarian v. Tod (C. C. A.) 290 Fed. 198.

Frank R. Galgano, of New York City, for the writ.
James C. Thomas, of New York City, opposed.

LEARNED HAND, District Judge (after stating the facts as above). The relator maintains in effect that the wife of any resident alien must be admitted regardless of the Quota Law, whether or not

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

at the time of his entry he was within any of the classes excepted from exclusion in section 3 of the Act of 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼b), or in section 2 (d) of the Quota Law (Comp. St. Ann. Supp. 1923, § 4289½a). The most plausible argument for this position is that such an alien is always within an excepted class, because he may at any time leave the United States on a temporary visit, and must be admitted on his return under the second proviso of section 2 (d) of the Quota Law, regardless of the quota: It has been held by authority conclusive on me (U. S. ex rel. Markarian v. Tod, 290 Fed. 198 [C. C. A. 2]) that such an alien may bring in his wife either with him or later. Since all resident aliens have the power to bring themselves within the exception, it is unnecessary that they should go through the form of leaving and re-entering, as, for example, going across the Canadian border for a few days. The right exists now and implies the derivative right of the wife.

The conclusion is supposed to be a corollary of U. S. ex rel. Markarian v. Tod, supra; the result implicit in its assumptions. Indeed, the argument has already been successful, i. e., in U. S. ex rel. Aznar v. Commissioner of Immigration, 298 Fed. 103 (D. C. S. D. N. Y. February 8, 1924). The status which brings an alien within one of the exceptions of section 2 (d) or of section 3 of the Act of 1917, if that, too, be enough, formally would appear to be determined at the time of entry. Yet a resident alien who becomes a singer or an actor might very plausibly argue that his change of vocation should endue him with the right to bring in his wife, regardless of the quota. With his present vocation he could come in and bring her with him, if he now applied for admission. If he is proper for admission, she should be proper for admission as well, and it is irrelevant whether or not at the time of his actual admission he was not within the class he has now attained. This seems to me to be quite in the face of the language used, and I should not assent to it even in the case of vocational qualifications, but it loses all its strength if applied generally. In that case the result would be to admit an indefinite number of aliens having no status whatever dependent upon their personal qualifications. Merely as wives of aliens already here, perhaps wives married only by proxy, as in U. S. ex rel. Aznar v. Curran, supra, they would be exactly of the same kind as those who are excluded by the quota. No reason of policy which excludes newcomers excepts them, unless it be that all residents are to be entitled as such to bring in their wives. There is no indication of any such purpose in the statute. While it may seem a somewhat idle requirement to say that an alien must leave and return in order to bring himself and his wife within an excepted class, it is scarcely possible that Congress should have intended presently to place all resident aliens in an excepted class, quoad their wives, merely because they might become such by a temporary visit. The result would be important, because there must be great numbers who cannot make such visits. In any event, it is a final answer that, if so, such wives with their absolute right of entry would have a superior status to the wives of citizens who under the last proviso of section 2 (d) have only a preference in the quota. Obviously that is a reductio ad absurdum. Therefore

I hold that, unless the relator returned from a temporary visit abroad in June, 1920, his wife may not now enter.

However, I cannot see that it makes any difference when the husband returns from such a temporary visit, whether before or after the Quota Law was passed. Certainly this must be so if at the time of entry he was of a class determined by his vocation. A lecturer or a religious teacher was as desirable an alien in July, 1920, as in July, 1921, and his wife is as desirable in either case. It cannot be a relevant distinction that at his entry he had no need to invoke his privilege; the exceptions must depend upon some personal qualification of the classes excepted. Similarly, an alien returning from a temporary visit must be as desirable an addition to the population before as after the Quota Law, and, if, as I must hold, he may bring in his wife in the second case, he may bring her in the first. Hence I hold that the single relevant issue in the case at bar is whether the relator in June, 1920, returned from a temporary visit abroad.

The return is annoyingly uncertain upon that question, probably because nobody at the time supposed that it was relevant to the case. The evidence shows that the relator had been here before for two years, and that he came back after marrying the alien. How long he stayed in Italy on his visit, and what were his purposes in leaving here, do not appear. His declaration of citizenship in 1922 lends some color to the notion that he had all along meant to make this his home. However, it fairly appears that the alien's right to enter was disposed of without regard to this controlling fact, and on the face of the record her exclusion was for this reason irregular. The board of special inquiry certainly failed to consider the only issue on which her right to enter depends, and by so doing they deprived her of a right to which she was entitled. Therefore I will order a reference before William Parkin, Esq., to hear and report whether when the relator re-entered in June, 1920, he was "returning from a temporary visit abroad."