**UNITED STATES ex rel. JACOVIDES et al. v. DAY, Commissioner of Immigration at Port of New York.**

Circuit Court of Appeals, Second Circuit.
May 6, 1929.

No. 336.

Charles H. Tuttle, U. S. Atty., of New York City (Leon E. Spencer, Asst. U. S. Atty., of New York City, of counsel), for appellant.

Gaspare M. Cusumano, of New York City, for appellees.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge. Section 4 of the Immigration Act of 1924 (43 Stat. 155; 8 USCA § 204) defines the term "nonquota immigrant." The definition embraces, by subdivision (d):

"An immigrant who continuously for at least two years immediately preceding the time of his application for admission to the United States has been, and who seeks to enter the United States solely for the purpose of, carrying on the vocation of minister of any religious denomination, or professor of a college, academy, seminary, or university; and his wife, and his unmarried children under 18 years of age, if accompanying or following to join him. * * *"

The adult relator claimed a nonquota status as a professor, but the Board of Special Inquiry found against him. It is the contention of the appellant that the record contains nothing which justified the District Court in upsetting the board's finding. The dispute centers about the meaning of the term "professor"; the Commissioner contending that the board rightly found that the alien's teaching was not of professorial grade, and that the institution to which he was coming was not a "college, academy, seminary or university."

The record of the hearing before the board shows that the aliens presented British passports, and nonquota immigration visas issued by the United States vice consul at Cairo, Egypt, on June 11, 1928; that the adult alien, Christos Jacovides, was graduated from the Patras School, of Athens, Greece, in 1914; that he was licensed to be a teacher of Greek in high schools; and that since September, 1920, he had taught Greek in the École Abet, Cairo. He had attended two years at the National University of Athens, but had been obliged to abandon his university course for lack of funds. After graduation from the Teachers' School he had become a teacher of Greek, for one year in Cyprus and for thirteen years in Cairo. The alien himself testified that he was not a professor, because he had not graduated from the University of Athens. Of course, his own definition is not controlling, and it was obviously based on a false premise. The departmental definition of "professor" is given in General Instruction Consular No. 926, issued by the Department of State on September 30, 1925, paragraph 135, as follows:

"Professors are defined by the Department of Labor as follows: 'The term "professor" as used in this section shall be construed to mean a person who is qualified to teach and who for two years immediately prior to applying for admission to the United States has taught some recognized subject in an institution of learning which corresponds to a college, academy, seminary or university, as these terms are understood in the United States, and who is coming to the United States solely for the purpose of carrying on such vocation here.' "

This accords, we believe, with a correct interpretation of the statute, and the alien's employment for more than two years immediately prior to applying for admission was such as to justify describing him as a professor of an academy.

But it is urged that, even if his teaching abroad satisfied the statutory definition, he was not seeking entry to the United States solely for the purpose of carrying on such

a vocation here. This was the ground upon which the board excluded him. His testimony was to the effect that, through the efforts of a cousin in Norfolk, Va., he had received a teaching appointment in a private school of the Hellenic Community of that city; that he was to teach Greek and ecclesiastical music, and was to sing in the church. He presented a letter, dated November 18, 1927, bearing the letter head of the Hellenic Community, the Orthodox Church Evangelismos, of Norfolk, Va., and reading as follows:

"You are hereby appointed by the Hellenic Community of Norfolk, Va., as schoolteacher for the Greek school of the community and as a church singer for the Greek Orthodox Church of Evangelismos, both appointments to take place immediately upon your arrival in this country. If you accept the above appointments, please notify us, advising at the same time of the probable date of your arrival.

"George Christos, President."

He further said that the Hellenic Community school to which he was going had three divisions, which he described as the first school, the gymnasium, and the university. He was to teach in the "first school." Whether he was to teach classical or modern Greek, and whether advanced or elementary courses, does not appear, except so far as inferences may be drawn from the fact that he was to teach in the "first school." The Commissioner urges that this fact alone shows that he was neither to be a "professor" nor to teach in an "academy." We take it that the statute uses these terms in their popularly accepted sense. See United States ex rel. Simonian v. Tod, 297 F. 172, 174 (C. C. A. 2). Webster's Collegiate Dictionary defines the former as "a public teacher of any science or branch of learning, especially in a university, college or other seminary." "Academy" is defined as "a college or a university; popularly, a school holding a rank between a college and a common school;" also, "a place of training; a school."

As is well known, many private schools which prepare students for college and may accurately be described as academies, such, for example as Groton School, St. Paul's School, or Williston Academy (for many years known as Williston Seminary), have courses of instruction which extend over more than four years; that is, the boys in the lower forms receive instruction below the grade of high school instruction. If Groton, for example, should appoint an alien to its teaching staff, to give instruction in the French language, we cannot believe it would be material for the immigration authorities to inquire whether the school gave him the title of "professor" or "instructor," or whether he was to teach the younger students or those in the older forms. Such a teacher would in popular speech be described as a professor of French in an academy. There can be no reason to think Congress meant to exclude such an alien if he taught boys in the first or second form, but to admit him if he taught those in the third or any higher form. The Hellenic Community School carried on teaching which prepared for collegiate instruction. It could properly be ranked as an academy, even if some of its instruction was of common school grade. Hence we think that the Board of Special Inquiry put an unduly restricted meaning on the language of section 4(d), and that its finding cannot be sustained.

Nothing in conflict with this view appears in Jeu Jo Wan v. Nagle, 9 F.(2d) 309 (C. C. A. 9), the only authority found which deals with the language in question. While section 23 (43 Stat. 165; 8 USCA § 221) puts upon the alien the burden of proof to establish that he was not subject to exclusion, the record is sufficient to show that he carried this burden.

The fact that the relator expected to act as a church singer, as well as to teach Greek and ecclesiastical music, does not preclude the view that he is entering solely for the purpose of carrying on the vocation of teaching. The incidental exercise of other talents, while teaching remains his vocation, is immaterial. Compare United States ex rel. Antonini v. Curran, 15 F.(2d) 266 (C. C. A. 2).

The decree of the District Court is affirmed.